NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 23, 2022

S19Z1369.  INQUIRY CONCERNING JUDGE TERRINEE LYNETTE GUNDY.

PER CURIAM.

This judicial discipline matter is before the Court on the agreement between the Director of the Judicial Qualifications Commission ("JQC") and City of Atlanta Municipal Court Judge Terrinee Lynette Gundy. The agreement would resolve formal charges against Judge Gundy, alleging excessive tardiness and absenteeism, with a suspension of 30 to 90 days and a public reprimand, pursuant to Rule 23 of the JQC's Rules. As explained below, we accept the agreement and order that Judge Gundy be suspended without pay for 90 days and publicly reprimanded.

In 2017, the JQC initiated a preliminary investigation of Judge Gundy, and after gathering some evidence, launched a full

investigation, which included Judge Gundy making at least one in-person statement before the Investigative Panel.[1] The JQC filed formal charges against Judge Gundy in June 2019. Amended formal charges were filed with this Court in January 2022; the JQC Director has explained that these were filed after review of the evidence, extensive discussions with Judge Gundy's counsel, and in anticipation of reaching an agreement as to discipline. The amended formal charges dropped certain counts alleging that Judge Gundy took steps to conceal her tardiness and absenteeism and misled the Investigative Panel. The JQC Director explained that further investigation led him to conclude that those allegations could not be proved by clear and convincing evidence.

According to the amended formal charges, Judge Gundy violated the Code of Judicial Conduct by being habitually tardy and

---

[1] The discipline by consent agreement recites several reasons for the slow resolution of this matter, including a change in JQC director, the COVID-19 pandemic and accompanying statewide judicial emergency, recusal by two members of the JQC's Hearing Panel, and the Hearing Panel's decision to grant a stay of these proceedings while matters relevant to the constitution of the JQC were heard before other courts.

excessively absent. Counts One through Three, the allegations of which Judge Gundy admits are true and violations of the Code of Judicial Conduct, allege that Judge Gundy violated the Code through her habitual tardiness. These counts allege that from September 2015 through February 2018, Judge Gundy regularly arrived to work at the courthouse much later than the time that she was scheduled to preside over court matters. Judge Gundy's tardiness was described by several witnesses and confirmed by access-card records. These records showed that from September 1 through December 31, 2015, Judge Gundy arrived well after 9:00 a.m. for her 8:00 a.m. calendars on approximately 69 days, arriving after 10 a.m., when her second calendar was scheduled to begin, on approximately 62 of those days. Records showed that from January 1 through June 1, 2016, Judge Gundy arrived at the courthouse after 9:00 a.m. for her 8:00 a.m. calendars on approximately 80 days and, on approximately 57 of those days, did not arrive at the courthouse until after her second calendar was scheduled to begin. From July 10 to December 31, 2017, Judge Gundy arrived late on

approximately 62 days, 33 days after 9:00 a.m. and four days after her 10:00 a.m. calendar was scheduled to begin. And from January 1 through February 22, 2018, Judge Gundy arrived late on approximately 18 days, five of those after 9:00 a.m. The amended formal charges allege that, by this habitual tardiness, Judge Gundy violated several rules of the Code of Judicial Conduct: Rule 1.2 (A) (requiring judge to act all times in manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary); Rule 2.1 (requiring that judicial duties take "precedence over all other activities"); and Rule 2.2 (requiring that judges dispose of all matters fairly, promptly, and efficiently).

Counts Four through Seven, the allegations of which Judge Gundy also admits are true and violations of the Code of Judicial Conduct, allege excessive absenteeism from January 2016 through July 2018. According to the amended formal charges, Judge Gundy was absent from work approximately 40 days in 2016, 63 days in 2017, and 19 days for the period of January 1 through July 17, 2018. The amended formal charges note that Judge Gundy suffered from

4

an illness in early 2017 that contributed to her absences, but allege that she was absent on 33 days in 2017 after the resolution of that illness. A significant number of Judge Gundy's absences, including those unrelated to her illness, resulted in the Municipal Court of Atlanta expending resources to employ senior judges or judges pro tem to cover for her. The amended formal charges allege that these actions by Judge Gundy violated Rules 1.2 (A), 2.1 and 2.2 of the Code of Judicial Conduct, as well as Rule 2.7 (requiring judges to hear and decide all assigned matters except when disqualified).

Finally, the amended formal charges include charges, Counts Eight through Twelve, related to allegations of a particular incident in March 2017, in which Judge Gundy allegedly refused to afford at least six defendants an opportunity to appear in court to which they were entitled by law. According to the amended formal charges, at a March 8, 2017, court session in which Judge Gundy was presiding over her "in-custody" calendars, both the prosecutor and defense counsel informed Judge Gundy that the law required that the defendants be brought into the courtroom and seen that morning.

But Judge Gundy refused, as she was attempting to hurry through the calendar. As the defendants remained in custody for several days, an attorney with the Public Defender's Office for the City of Atlanta filed an emergency petition for a writ of habeas corpus seeking to compel the release of the defendants; a hearing in Superior Court on the motion was set for March 16, 2017. Between March 14 and 15, 2017, Judge Gundy issued signature bonds for each of the defendants, effectively mooting the habeas petitions. As a result of Judge Gundy's actions, the amended formal charges allege, the six defendants remained incarcerated days after they would have been entitled to release. The amended formal charges allege that by these actions Judge Gundy violated Rules 1.2 (A), 2.2 and 2.7 of the Code of Judicial Conduct, as well as Rules 1.1 (requiring judges to respect and comply with the law) and 2.6 (A) (requiring judge to accord a right to be heard to all with a legal interest in a proceeding). In the discipline by consent agreement, Judge Gundy "admits that evidence exists with which the Director could properly prove the facts and circumstances herein as they

relate to Counts Eight through Twelve" and "admits that evidence exists with which the Director could properly prove that she violated the Code as alleged in Counts Eight through Twelve."

The JQC Director and Judge Gundy in July 2022 asked the Hearing Panel to approve their agreement to resolve the matter by Judge Gundy receiving a public reprimand and a suspension of 30 to 90 days. In recommending that the Hearing Panel accept this agreement, the Director cites in mitigation Judge Gundy's apparent cessation of the charged conduct; her expressions of remorse and regret and vow to never engage in such conduct again; her insistence that she has learned from her past conduct and the disciplinary process; her retention by Atlanta voters twice since the inception of the JQC's investigation; her active involvement in numerous civic and religious activities; and the fact that this matter represents the only substantiated complaint that Judge Gundy has faced since becoming a judge in 2013. Specifically as to the allegations at hand, the Director says that two serious health issues are "relevant to Judge's Gundy's absences from the beginning of November of 2016

7

through the end of April 2017," and that, "relevant to her tardiness, the public defenders and assistant solicitors assigned to Judge Gundy's courtroom specifically requested that they be permitted to engage in pretrial negotiations at the beginning of her 8:00 [a.m.] in[-]custody calendars held five days a week before Judge Gundy would take the bench and actually begin hearing cases." The Hearing Panel voted unanimously to accept the agreement, and on July 25, 2022, filed it with this Court for approval.

This Court previously has imposed a public reprimand for habitual tardiness and absenteeism by a judge. See *Inquiry Concerning Stokes*, 304 Ga. 665 (821 SE2d 343) (2018). But, as acknowledged by the JQC Director and Judge Gundy in their agreement, the facts of this case are more egregious than that one. Judge Gundy was absent approximately 40 days in 2016, 63 days in 2017, and 19 days in 2018 (through July 17, 2018), considerably more than Judge Stokes. See *Stokes*, 304 Ga. at 665. Judge Gundy's tardiness appears greater than Judge Stokes's; while Judge Stokes often began court more than an hour late, and sometimes did not

8

arrive at the courthouse until after the court's scheduled starting time, Judge Gundy often did not even arrive at the courthouse until two or more hours after the scheduled start time. See id. Moreover, Judge Gundy also agrees that the JQC could prove that she violated the law by refusing, over objection, to allow scheduled appearances of arrestees, resulting in six arrestees each staying in jail for approximately an extra week. No such harm was at issue in Judge Stokes's case. See id. at 665-666.

Much of the misconduct at issue here has gone unexplained by Judge Gundy. Although the agreement indicates that health issues explain Judge Gundy's absences from the beginning of November 2016 through the end of April 2017, that does not necessarily explain all 40 of her absences in 2016 and leaves unexplained 33 absences in 2017 and 19 absences in less than the first seven months of 2018. Although the agreement suggests that Judge Gundy sometimes was late for her 8:00 a.m. calendars because lawyers asked to engage in negotiations before she took the bench, that does not explain why Judge Gundy on many occasions arrived at the courthouse after 9:00

9

a.m. or even 10:00 a.m., even when she had court. And the agreement is silent on Judge Gundy's response to the counts based on the March 2017 incident that kept six defendants in jail days beyond when they should have been released, except to suggest that she does not concede that events transpired as alleged by the JQC (although she agrees that the allegations could be proved). This last incident is particularly concerning to us.

Nevertheless, the Court now accepts the agreement with Judge Gundy approved by the Hearing Panel and filed with this Court on July 25, 2022. We do so with some hesitation; the allegations, all of which Judge Gundy either admits altogether or agrees that the JQC could prove, are serious, especially the refusal to follow the law — over objection by both the State and defendants — that led to six defendants each spending an unnecessary week in jail. But this case has been pending for over three years, both Judge Gundy and the people she serves deserve a resolution (which would be delayed even further if we reject this agreement), and a 90-day suspension is among the most serious sanctions we have ever imposed short of

removal from office.[2] Accordingly, this Court orders that Judge Terrinee Lynette Gundy be suspended without pay for 90 days and receive a public reprimand, which shall be imposed on her in person in open court by a judge designated by this Court. Upon issuance of this opinion, all filings made in this Court in this matter shall be unsealed. See JQC Rule 23 (D).

*Discipline by consent accepted. Public reprimand and suspension for 90 days. All the Justices concur, except Colvin, J., disqualified.*

---

[2] We are skeptical that retention by the voters is properly considered a mitigating factor. And active involvement in numerous civic and religious activities, while often mitigating in other circumstances, seems somewhat out of place as a factor in mitigation for charges of not being sufficiently present at work. But even if we were to discount those factors entirely, we would arrive at the same conclusion.